## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**LISA C.,**[1]

        **Plaintiff,**

     **v.**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

      **Case No. 1:21-cv-496**
      **JUDGE DOUGLAS R. COLE**
      **Magistrate Judge Bowman**

### OPINION AND ORDER

The Magistrate Judge's August 2, 2022, Report and Recommendation ("R&R") (Doc. 13), advises this Court to affirm the Commissioner of Social Security's (Commissioner) decision denying Plaintiff social security disability benefits. For the reasons below, the Court **OVERRULES** Plaintiff's Objection (Doc. 14), **ADOPTS** the R&R (Doc. 13), and **AFFIRMS** the Commissioner's decision.

### BACKGROUND

Plaintiff believes she is disabled, both physically and mentally, as the Social Security Administration (SSA) defines that term. She applied for social security disability benefits in July 2016. (*See* R&R, Doc. 13, #1861). SSA personnel denied her claim. (*Id.*). Plaintiff challenged that decision before an SSA Administrative Law Judge (ALJ) and requested an evidentiary hearing. (*Id.*). On June 30, 2018, Plaintiff appeared before the ALJ and provided testimony. (*Id.* at #1861–62). The ALJ issued

---

[1] Due to privacy concerns, this Court refers to social security claimants only by their first names and last initials. *See* S.D. Ohio General Order 22-01.

a written decision on July 30, 2018, finding Plaintiff not disabled. (*Id.* at #1862). The SSA Appeals Council declined review. (*Id.*). That made the ALJ's decision final.

Plaintiff then appealed to this Court. (*Id.*). Shortly after, the parties jointly agreed to additional ALJ review, and Plaintiff voluntarily withdrew her appeal. (*Id.*).

On remand to the SSA, the SSA Appeals Council ordered the ALJ to re-evaluate the opinion of Dr. Andrea Johnson, a consulting psychologist. (*Id.*). The ALJ conducted a telephone hearing on March 30, 2021. (*Id.*). Then, on April 30, 2021, the ALJ issued a second written decision—the decision at issue here. (*Id.*). The SSA Appeals Council later declined review, making the ALJ's April 30 ruling the new final decision of the Commissioner. (Doc. 13, #1862).

In that decision, the ALJ first concluded Plaintiff met the insured status requirements and had not engaged in substantial gainful activity since her alleged onset date. (Tr. 763–64, Doc. 6-8, #790–91). After filing her initial claim in 2016, though, Plaintiff admitted she had since engaged in *some* work activity. She testified to the ALJ that, following her onset date, she has worked between twenty and twenty-four hours a week for different businesses. (Tr. 763, Doc. 6-8, #790). And notably, she elsewhere told medical professionals that she has never been fired from a job. (Tr. 304, Doc. 6-7, #330). Still, the ALJ determined Plaintiff's labor fell "slightly below" substantial gainful activity. (*Id.*; Tr. 765, Doc. 6-8, #792). Moving on, the ALJ next concluded Plaintiff had severe physical and mental impairments, but that those impairments, whether considered alone or in conjunction, did not meet or medically

equal one of the listed impairments in 20 C.F.R. § 404. (*Id.*). Thus, they did not give rise to a presumption of disability.

The ALJ then assessed Plaintiff's residual functional capacity (RFC). (Tr. 766, Doc. 6-8, #793). To do so, the ALJ considered Plaintiff's physical and mental health records, work history, and the opinions of medical and vocational professionals. (Tr. 766–75, Doc. 6-8, #793–802). Two medical professionals in particular—Dr. Peter Boxer, Plaintiff's treating psychiatrist, and Dr. Andrea Johnson, a consulting psychologist—reported Plaintiff's mental health prevented her from working. (Tr. 298–300, Doc. 6-7, #324–26; Tr. 306–37, Doc. 6-7, #332–33). But after reviewing their opinions and comparing them to the record, the ALJ gave little weight to Boxer's and Johnson's conclusions. (Tr. 774–75, Doc. 6-8, #801–02). As a result, the ALJ determined Plaintiff had an RFC that allowed her to perform light work with some restrictions.

From that finding, and given Plaintiff's age, education, and work experience, the ALJ determined she could perform jobs that exist in significant numbers in the national economy. (Tr. 776, Doc. 6-8, #803). Accordingly, the ALJ found Plaintiff not disabled as the Social Security Act defines that term. (Tr. 777, Doc. 6-8, #804).

In her appeal here, Plaintiff raised three main challenges to that decision. In the first two, Plaintiff targeted the ALJ's RFC conclusion as it related to her mental health (but did not challenge the RFC conclusion based on her physical conditions). First, Plaintiff argued the ALJ improperly evaluated Boxer's opinion. (Doc. 13, #1864). Second, Plaintiff said the ALJ improperly evaluated Johnson's opinion. (*Id.*).

3

Finally, Plaintiff raised a separate argument against the SSA's statutory structure, saying it violated the separation of powers. (*Id.*).

After considering Plaintiff's arguments, the Magistrate Judge issued an R&R advising the Court to affirm the Commissioner's decision (the ALJ's April 30 decision). (*Id.* at #1887). The R&R concluded that the ALJ did not commit procedural error and that substantial evidence supported the ALJ's conclusions regarding both Boxer and Johnson. (*Id.* at #1870–87). The R&R also concluded Plaintiff's separation of powers challenge did not warrant remand. (*Id.* at #1869). The Magistrate Judge gave the parties 14 days to lodge specific objections to the R&R. (*Id.* at #1888).

Plaintiff objected. (Doc. 14). Although styled as one objection, Plaintiff argued the R&R failed to recognize three mistakes in ALJ's decision. More specifically, the Magistrate Judge erred by: (1) failing to note that the ALJ violated procedure by not correctly applying the "controlling weight test" to Boxer's opinion (*id.* at #1891); (2) not acknowledging that the ALJ had failed to provide sufficient good reasons to afford Boxer's opinion little weight (*id.* at #1892); and (3) upholding the ALJ's decision to afford Johnson's opinion little weight (*id.* at #1894–95). But Plaintiff did not object to the portion of the R&R related to her separation of powers argument.

The Commissioner responded to Plaintiff's objections. (Doc. 15). The Commissioner defended the R&R and the ALJ, arguing both properly evaluated Boxer's and Johnson's opinion evidence. (*Id.* at #1898–90).

The objections are now ripe.

4

## LEGAL STANDARD

If a party objects within the allotted time to a report and recommendation, the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

But that is not the only relevant standard of review. In this case, the Magistrate Judge reviewed a decision by an ALJ employed by the SSA and adopted by the Commissioner. In that setting, courts are "limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ealy*, 594 F.3d at 512. So long as substantial evidence supports the Commissioner's conclusion, the court should affirm, even if substantial evidence in the record would also support a different conclusion. *Id.* But even if substantial evidence supports the ALJ's decision, the court cannot affirm if "the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r of*

5

*Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

Putting all that together, when a party specifically objects, this Court reviews that portion of the R&R de novo to assess whether (1) the Magistrate Judge correctly determined that the ALJ's decision applied the correct legal standards (including the SSA's own regulations), and (2) substantial evidence supported the ALJ's decision.

## LAW AND ANALYSIS

For Social Security disability benefits, a disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). By regulation, the SSA developed a five-step analysis to tell whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). As relevant here, a claimant may not be gainfully employed and must have one or more severe, medically determinable physical or mental impairments. *See id.* The SSA considers some impairments, listed in a regulatory appendix, as so severe they automatically entitle a claimant to benefits. *See id.*

If, as here, the list does not contain the claimant's impairment or its equivalent, the SSA then considers whether the claimant can still work. *See id.* That is, the SSA assesses the claimant's "residual functional capacity," or RFC, often relying on medical and vocational experts to assist in that determination. *See id.* Then, based on the claimant's RFC, age, education, and work experience, the SSA

asks whether the claimant can either continue performing the work they had done before, or perform some different job or jobs that exist in significant numbers in the national economy. *See id.* If the claimant falls into either bucket, the SSA will find the claimant not disabled. *See id.* Otherwise, the claimant is disabled. *See id.*

In this appeal, Plaintiff challenges the ALJ's conclusion that she can perform "light work" with some restrictions and so is not disabled. (Tr. 766, Doc. 6-8, #793); *see also* 20 C.F.R. § 404.1567(b) (defining "light work"). Specifically, she objects that the ALJ miscalculated her RFC as it pertains to her mental limitations because the ALJ gave too little weight to Boxer's and Johnson's opinions, and that the R&R thus erred in approving the ALJ's decision. The Court examines the ALJ's treatment of each doctor below. Ultimately, the Court finds the ALJ did not commit reversible error and the R&R correctly recommends the case be closed.

## A. The ALJ Did Not Commit Reversible Error In The Weight Given To Dr. Boxer.

Before starting, a word about which version of the relevant rules apply. In March 2017, the SSA updated its rules on the weight afforded treating physicians. *See* 20 C.F.R. § 404.1520c. But the new rule instructs that "[f]or claims filed before March 27, 2017, the rules in § 404.1527 apply." *Id.* So the Court applies § 404.1527— with the caveat that this analysis would look different if Plaintiff had filed today.

All agree Boxer qualifies as Plaintiff's treating physician. (*See* Tr. 298–300, Doc. 6-7, #325–27; Tr. 505, Doc. 6-8, #531). And when evaluating a treating physician's medical opinion, an ALJ gives that opinion "controlling weight" if (1) medically acceptable data and techniques support that opinion, and (2) the ALJ

finds the opinion "is not inconsistent with the other substantial evidence in the record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)). If an ALJ finds that a treating physician's opinion should receive less than controlling weight, the ALJ must give "good reasons" why, again by reference to the two factors above. *See* 20 C.F.R. § 404.1527(c)(2). And the ALJ must also determine, once again based on "good reasons," how much weight to assign that opinion. *Id.* Appropriate factors for that analysis include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

Start with Boxer's opinion. Boxer stated his opinion in two documents. First, Boxer signed off on a May 2016 disability questionnaire that a social worker, Ryan Lenz, had prepared. (Tr. 298–300, Doc. 6-7, #324–26). There, Boxer agreed with Lenz's description that Plaintiff suffered "depression, anger, frustration, [and] anxiety" that "complicate virtually all actives." (Tr. 299, Doc. 6-7, #325). He also concurred in Lenz's assessment that "I do not believe [Plaintiff] could tolerate [the] stress of employment due to [her] symptoms." (Tr. 300, Doc. 6-7, #326). But the questionnaire cites only two objective findings to support these opinions: Plaintiff was "very depressed" and had "flat affect." (*See* Tr. 298–300, Doc. 6-7, #324–26). And Boxer noted Plaintiff had only begun mental health treatment in February 2016, a few months earlier. (*Id.*).

Second, Boxer completed an April 2018 "check-the-box" medical source statement. (Tr. 505, Doc. 6-8, #531). That is, the form allowed Boxer to check certain boxes to detail Plaintiff's condition. On that form, Boxer listed Plaintiff as having an "extreme" limitation in appropriately responding to criticism from supervisors, and a "marked" limitation in responding appropriately to both co-workers and the public. (*Id.*). And in a comments section at the form's end, Boxer elaborated that her "mood can be quite labile" and that she "would be quick to respond to perceived criticism with anger and flight, at best, and possibly with aggressive behavior." (Tr. 507, Doc. 6-8, #533).[2]

After evaluating Boxer's opinion, the ALJ's April 30 decision declined to give it controlling weight and instead afforded it little weight:

> [L]ittle weight was given to Dr. Peter Boxer, who found some extreme mental health limitations (2F, pp.2–4; 7F, pp.1–3). In May 2016, Dr. Boxer completed a disability questionnaire in which he concluded that the claimant could not tolerate the stress of employment due to symptoms (2F, p.4). However, Dr. Boxer indicated that the claimant just started treatment in February 2016 (2F, p.3). In addition, the only clinical findings provided were "very depressed" and "flat affect" (2F, p.3). Then, in April 2018, Dr. Boxer completed a medical source statement, which noted multiple marked or extreme limitations (7F, pp.1–3). For example, Dr. Boxer concluded that the claimant had an extreme limitation in the ability to accept instruction or respond appropriately to criticism from supervisors or superiors (7F, p.1). In addition, Dr. Boxer opined that she had a marked limitation in the ability to process subjective information accurately and to use appropriate judgment (7F, p.2). Further, Dr. Boxer concluded that she had a marked limitation in the ability to behave predictably, reliably and in an emotionally stable manner (7F, p.2). However, this was a check-the-box form with no citation to the objective findings relied upon in making these determinations (7F, pp.1–3). In the comment section,

---

[2] To be clear, the record includes various other treatment notes relating to Boxer's treatment of Plaintiff. But the two opinions referenced above were the only ones specifically directed at her disability for SSA purposes.

Dr. Boxer stated that the claimant "has chronic depression with frequent, episodic exacerbation. Her mood can be quite labile. She has longstanding mistrust of others, and is prone to misinterpret others' actions, which can lead to her becoming verbally aggressive" (7F, p.3). I gave little weight to Dr. Boxer's opinions, which must have relied heavily on the claimant's subjective reports of functioning, as his treatment records do not contain objective findings to support such extreme limitations. In addition, Dr. Boxer's opinions are inconsistent with longitudinal treatment record and the claimant's ability to work slightly below substantial gainful activity during the pertinent time period of this decision (18F, pp.67–69; 14D, pp.3–4, for example).

(Tr. 774, Doc. 6-8, #801).

Here, Plaintiff argues the ALJ committed two errors when analyzing Boxer's opinion—one procedural and one substantive. First, Plaintiff says the ALJ committed procedural error in failing to even apply the "controlling weight test." (Doc. 14, #1891). Second, Plaintiff says that even if ALJ correctly chose not to give the opinion controlling weight, the ALJ did not provide sufficient "good reasons" for the little weight he ultimately assigned to Boxer's opinion. (*Id.* at #1892).

### 1. The ALJ Did Not Err In Refusing To Give Boxer's Opinion Controlling Weight.

According to Plaintiff, 20 C.F.R. § 404.1527(c)(2) requires that "[t]reating source opinions … be considered first, before all other opinion evidence, and evaluated for controlling weight." (Doc. 14, #1891). What that means, Plaintiff says, is the ALJ must first apply the "controlling weight test" before diving "into an analysis of whether there were 'good reasons' supported by substantial evidence for according less than controlling weight to Dr. Boxer's opinions." (*Id.* at #1892). And here, Plaintiff says, the ALJ did not do so. Rather, she says, the ALJ committed procedural

10

error by essentially collapsing the controlling weight test and the ultimate weighting determination into a single analysis.

The Court agrees with Plaintiff that the two decisions—whether to give controlling weight versus how much weight to give an opinion not afforded controlling weight—are distinct decisions. Under § 404.1527(c)(2), the ALJ must provide good reasons supporting each decision. But what *counts* as a good reason for the first inquiry differs from the second inquiry. In deciding whether to give a treating physician's opinion controlling weight, the ALJ may only consider whether it is (1) "well supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). That is, the regulation restricts the permissible "good reasons" to those two categories alone.

Once the ALJ decides to not provide controlling weight, though, the list of relevant factors expands. To determine the opinion's ultimate weight, the ALJ can consider "the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, was well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion." *Id*. So the "good reasons" for the weighing decision can include any evidence addressing those factors.

All that said, it is unclear from the objections why Plaintiff believes that the ALJ impermissibly collapsed those two inquiries here. True, the ALJ handles both in the single paragraph quoted above. And in doing so, he points to various reasons without carefully parsing out which reasons he relied on for the controlling weight

11

decision rather than the ultimate weighting inquiry. But if Plaintiff suggests that the ALJ's mere failure to strictly separate the two tests means that the Court should presume the ALJ relied on impermissible grounds, that runs straight into the presumption of regularity that applies to government agency decisions, including those by the SSA. *See Lawrence v. Comm'r of Soc. Sec.*, 591 F. App'x 470, 471 (6th Cir. 2015) (noting a presumption of regularity applies to government agencies like the SSA).

But apart from that, independently reviewing the ALJ's determination shows that the ALJ tendered permissible reasons to deny Boxer's opinion controlling weight. The ALJ first addressed whether the medical evidence supported Boxer's opinion, finding it did not. According to the ALJ, the "treatment records do not contain objective findings to support [his proposed] extreme limitations." (Tr. 774, Doc. 6-8, #801). Moreover, the opinion likely "relied heavily on the claimant's subjective reports of functioning." (*Id.*). And as for the "other substantial evidence in the case record," the ALJ found Boxer's opinion "inconsistent with longitudinal treatment record and [Plaintiff's] ability to work slightly below substantial gainful activity during the pertinent time period." (*Id.*). Those are all permissible reasons for the ALJ to decline controlling weight. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (affirming an ALJ's decision to deny controlling weight where the opinion conflicted with the record and was based on the claimant's self-reporting of symptoms).

Sure, the ALJ did not use the words "controlling weight." But so what? The ALJ still ran through the required steps using the required variables. Particularly

given the presumption of regularity, that is enough. *See, e.g.*, *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (affirming an ALJ's "brief" one-sentence rejection of a treating physician's opinion); *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012) (affirming an ALJ decision to not give a treating physician opinion's controlling weight where the opinion conflicted with the record and relied on subjective evidence without objective findings).

The Court acknowledges that Plaintiff's Statement of Specific Errors references a few district court cases suggesting an ALJ must separately address whether a treating physician should receive controlling weight before discussing the "good reasons" for the weight the ALJ affords them. (Doc. 8, #1802–03). For example, the court in *Lutz v. Commissioner of Social Security* chided the ALJ for failing to use the phrase "controlling weight" and to separately address whether the treating physician's opinion should receive such weight. No. 3:16-cv-210, 2017 WL 3140878, at *3 (S.D. Ohio July 25, 2017), *report and recommendation adopted*, 2017 WL 3432725 (S.D. Ohio Aug. 9, 2017). The R&R brushed these cases aside in a footnote, finding them not controlling and unpersuasive. (Doc. 13, #1871). And for whatever reason, Plaintiff does not mention these cases in her objection to the R&R. (*See* Doc. 14). Thus Plaintiff has waived that argument here.

Even had Plaintiff raised these cases, though, the Court would not change its conclusion. The Court can find nothing in the regulations or Sixth Circuit precedent requiring an ALJ to use the phrase "controlling weight" or to separately identify exactly which reasons the ALJ relied on in denying controlling weight rather than

weighting generally. Nor do the cases in question clearly explain from where these requirements derive. *See, e.g.*, *Lutz*, 2017 WL 3140878, at *3; *Dunham v. Comm'r of Soc. Sec.*, No. 3:16-cv-414, 2017 WL 4769010, at *4 (S.D. Ohio Oct. 20, 2017), *report and recommendation adopted sub nom. Dunham v. Berryhill*, 2018 WL 502715 (S.D. Ohio Jan. 22, 2018). Without authority dictating otherwise, the Court declines to foist novel procedural requirements on the ALJ. Accordingly, the Court overrules this objection.

### 2.  Substantial Evidence Supports The ALJ's Good Reasons To Give Dr. Boxer's Opinion Little Weight.

Plaintiff next attacks the ALJ's basis for affording Boxer's opinion little weight. As noted, an ALJ must provide good reasons for the weight given a treating physician when that physician does not receive controlling weight. 20 C.F.R. § 404.1527(c)(2). An ALJ's good reasons for discounting a treating physician's opinion must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (citation omitted). Those good reasons can include "[l]ack of sufficient rationale, internal inconsistency, inconsistency with the evidence of record, and lack of support for many of the proffered limitations." *Makela v. Comm'r of Soc. Sec.*, No. 22-1047, 2022 WL 9838285, at *6 (6th Cir. Oct. 17, 2022).

The ALJ drew upon familiar reasons when giving Boxer's opinion little weight. First, the ALJ determined Boxer's 2016 questionnaire lacked sufficient objective findings, and Boxer completed the form only four months after Plaintiff had begun

14

treatment. (Tr. 774, Doc. 6-8, #801). Second, Boxer's 2018 medical source statement, where he notes multiple marked or extreme limitations, does not cite *any* objective findings. (*Id.*). Third, Boxer's conclusions "must have relied heavily" on Plaintiff's own subjective reports. (*Id.*). Fourth, Boxer's opinion contradicts the longitudinal treatment records and Plaintiff's own work history. (*Id.*). Each reason accompanied citations to the record.

Plaintiff focuses her challenge here on how the ALJ treated Boxer's April 2018 "check-the-box" medical source statement. (Doc. 14, #1892–93). First, she says that the mere fact that Boxer used a checkbox format to deliver his opinion does not render it invalid. (*Id.*). Second, she says the record overall tracks with and supports Boxer's assessment. (*Id.* at #1893). Finally, Plaintiff says Boxer did not err when relying on Plaintiff's subjective reports. (*Id.*). Indeed, Plaintiff argues physicians often must make mental diagnoses based on a patient's subjective reports. (*Id.*).

Under the deferential standard of review, the Court cannot say the ALJ erred. The Court agrees with Plaintiff that the 2018 statement's checkbox format does not, by itself, render Boxer's conclusions suspect. *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). But other factors do. First, substantial evidence in the record contradicts Boxer's opinion. Recall Boxer reported that Plaintiff could not respond appropriately to supervisors, co-workers, and the public. (Tr. 505, Doc. 6-7, #531). He later expanded that Plaintiff would respond with anger, flight, and potentially aggressive behavior when challenged. (Tr. 507, Doc. 5-8, #533).

But as the ALJ detailed, the record contradicts Boxer's bleak assessment. Indeed, other medical professionals several times described Plaintiff as quiet, calm, friendly, engaged, stable, and normal. (Tr. 770–72, Doc. 6-8, #797–99). And Plaintiff's own work record, including working twenty to twenty-four hours a week even after her alleged disability's onset, further defies Boxer's conclusions. (*See* Tr. 765, Doc. 6-8, #792). In fact, Plaintiff admitted she has never been fired from a job—contradicting Boxer's view that she cannot interact appropriately in a professional environment. (Tr. 304, Doc. 6-7, #330).

Nor did the ALJ err in discounting Boxer's opinion for relying on Plaintiff's subjective reports. Under Sixth Circuit precedent, an ALJ can discount a treating physician's opinion where the physician's "assessment relied on subjective symptoms without support of objective findings." *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 426 (6th Cir. 2014); *see also Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493 (6th Cir. 2016).

Plaintiff disagrees with that. She maintains that Boxer properly diagnosed her when he relied on her self-reported symptoms, and that the ALJ erred in finding otherwise. (Doc. 14, #1893). In support, Plaintiff cites *Winning v. Commissioner of Social Security*, 661 F. Supp. 2d 807 (N.D. Ohio 2009). There, the district court reviewed an ALJ who had summarily rejected a doctor's mental assessment because the doctor "rel[ied] substantially on the subjective presentation and statements of the claimant, who is not found to be entirely credible." *Id.* at 821. The court called the ALJ's explanation conclusory, asserting it failed to provide the necessary detail. *Id.*

16

The court also condemned the rationale as illogical, "since psychology and psychiatry are, by definition, dependent on subjective presentations by the patient." *Id.* As to the latter point, the *Winning* court feared, and Plaintiff here echoes, that line of argument would eliminate most if not all psychological opinions in Social Security disability matters. *Id.*

But *Winning* changes nothing for two reasons. First, *Winning* is not binding on this Court. And, as discussed above, the Sixth Circuit (which is binding) allows ALJs to discount opinions that overly rely on subjective evidence. *See Dyer*, 568 F. App'x at 428. Second, *Winning* is distinguishable. The *Winning* court reversed in part because the ALJ rejected the physician's opinion out-of-hand "without any elaboration or detail." 661 F. Supp. 2d at 821. Not so here. The ALJ did not toss out Boxer's opinion without elaboration. Rather, the ALJ prepared a thoughtful analysis that considered multiple factors—including the report's stark inconsistency with the record. Taken together, then, substantial evidence supports the ALJ's decision to discount Boxer's opinion.

**B.    The ALJ Did Not Commit Reversible Error In The Weight Given To Dr. Johnson.**

That leaves Plaintiff's arguments related to Johnson's opinion. Johnson examined Plaintiff and concluded that she "is likely to have significant difficulties with job related tasks due to mental health problems" and "is unlikely to respond appropriately to coworkers in a work setting." (Tr. 306–37, Doc. 6-7, #332–33). But Johnson also reached this conclusion in large part based on Plaintiff's own self-reporting. (Tr. 304, Doc. 6-7, #330).

17

Much as with Boxer, the ALJ found Johnson's opinion entitled to little weight:

I found Dr. Johnson's opinion largely inconsistent with longitudinal medical record. For example, treatment records have repeatedly documented that the claimant presented with normal speech, normal thought processes, normal thought content, fair judgment, fair insight, intact memory, intact attention and concentration, and intact fund of knowledge (18F, pp.11–12, pp.67–69). Additionally, Dr. Johnson based large portions of her opinion on the claimant's subjective reports, such as the claimant's report of having significant interpersonal problems with supervisors and coworkers (3F, p.6). However, the claimant's self-reported history of difficulties with supervisors and coworkers seems inconsistent with her ability to maintain employment at Amazon for seven years, Wal-Mart for nine years, and Rural King since December 2019 (3F, p.4). Further, Dr. Johnson found that the overall interaction with the claimant was adequate (3F, p.7). The claimant's treatment providers have also documented that she presented as friendly, cooperative, and engaged well (15F, pp.40–41; 18F, p.28, p.56). Consequently, I gave little weight to this opinion.

(Tr. 775, Doc. 6-8, #802).

In response, Plaintiff returns to familiar arguments. First, Plaintiff says the ALJ wrongly discounted Johnson's opinion for relying on Plaintiff's subjective reports. (Doc. 14, #1894). Second, Plaintiff argues substantial evidence does not support the ALJ's conclusion that Johnson's opinion contradicted the record. (*Id.* at #1895).

For much the same reason the ALJ did not err as to Boxer, the ALJ also did not err as to Johnson. To start, the ALJ could properly discount Johnson for overly relying on Plaintiff's subjective reports. *See Spicer*, 651 F. App'x at 493. Second, substantial evidence supports the ALJ's finding that Johnson's opinion contradicted the record. Namely, the ALJ found Johnson's opinion (1) inconsistent with other medical documents and records, and (2) inconsistent with Plaintiff's work history. (Tr. 775, Doc. 6-8, #802). And the ALJ cited the record to support each conclusion.

18

(*Id.*). Although Plaintiff argues some record evidence supports Johnson's opinion, (Doc. 14, #1895), the ALJ referenced sufficient evidence to justify her own conclusion. *See Ealy*, 594 F.3d at 512 (noting the Court should affirm if substantial evidence supports the ALJ's conclusion, even if the record also contains other substantial evidence going the other way).

## CONCLUSION

For these reasons, the Court **OVERRULES** Plaintiff's Objection (Doc. 14), **ADOPTS** the R&R (Doc. 13), and **AFFIRMS** the Commissioner's decision. The Court **ORDERS** the Clerk to enter judgment and **TERMINATE** this matter from the docket.

**SO ORDERED.**

July 31, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

19